UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS PETERSON,<br>       Defendant. | Criminal Action No. 07-135 (JDB)<br><br>FILED<br>SEP 1 3 2007<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

## ORDER

The Court held a hearing on defendants' motions to suppress certain evidence on August 31, 2007, and denied all but one of the motions in an oral ruling from the bench. The Court herein addresses defendant's remaining motion, which seeks to suppress statements he made to police on April 25, 2007, during execution of a search warrant at his place of residence. At the August 31 hearing, the Court requested further briefing on that issue, which has now been received.

On April 25, 2007, at about 7:02 a.m., United States Park Police officers executed a search warrant at 915 Allison Street, NW, Apartment 101, in the District of Columbia. See Prelim. Tr. of Motions Hr'g ("Prelim. Tr.") at 83. The officers knocked loudly on the apartment door, and announced three times that they had a search warrant, each time stating "open the door" and waiting five to six seconds between knocks. Id. at 84-85. After no response, the officers forced entry into the apartment. Id. at 86. They located defendant in one bedroom, and another man in the living room. Id. at 87. The two men were then seated on a couch in the living room, handcuffed, and briefly interviewed. Id. Sergeant Wilson asked defendant his name, date of birth, social security number, address, who was in the apartment, who was on the lease, and

"what bedroom was his." Id. at 89, 107, 113, Defendant responded that he had lived in the apartment for 10 years, that his mother's name was on the lease, and, apparently, identified which bedroom was his. Id. at 89-90.[1] Defendant was not read his Miranda rights before being questioned. Id. at 94.

Defendant contends that his statements must be suppressed on the ground that they were obtained in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). The government responds that the police were not required to provide Miranda warnings because the prerequisite for such warnings -- custodial interrogation -- is absent: defendant was not in custody at the time of questioning, and the questions asked by the officers were routine booking questions that are exempt from Miranda in any event.

An officer's obligation to administer the warnings described in Miranda is triggered "'only where there has been such a restriction on a person's freedom as to render him 'in custody.'" Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). The Supreme Court has addressed the definition of "custody" in several cases, but has emphasized that "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." Stansbury, 511 U.S. at 322 (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)) (emphasis added); see also United States v. Calloway, 298 F. Supp. 2d 39, 47-48 (D.D.C. 2003) (discussing Beheler and subsequent cases, and concluding that "the circumstances surrounding the interrogation must constitute the functional equivalent of a formal arrest")

---

[1] Although Investigator Ward, the only witness at the August 31 hearing regarding execution of the search warrant, was not sure defendant stated which bedroom was his, the briefing and argument have proceeded on the basis that defendant did answer Sergeant Wilson's inquiry.

2

(emphasis in original). The relevant inquiry is an objective one focusing on "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). The defendant bears the burden of proving custody by a preponderance of the evidence. See United States v. Goldberger, 837 F. Supp. 447, 452 n.4 (D.D.C. 1993).

Applying these standards, the Court finds that, looking at the totality of the circumstance, defendant was "in custody" during the execution of the search warrant. This Circuit observed in United States v. Gaston, 357 F.3d 77, 82 (D.C. Cir. 2004), that there is some authority to support the proposition that handcuffing does not automatically constitute custody, and is instead just one factor to be considered; the Circuit declined, however, to decide the issue. See 357 F.3d at 82 (citing United States v. Leshuk, 65 F.3d 1105, 1109-10 (4th Cir. 1995), and United States v. Bautista, 684 F.2d 1286, 1291-92 (9th Cir. 1982)). Gaston thus suggests that where circumstances otherwise indicate the lack of a coercive setting -- for example, no weapons are drawn (Leshuk, 65 F.3d at 1110) or the language used to summon the defendant is not threatening (Bautista, 684 F.2d at 1292) -- one might find an absence of custody, notwithstanding the use of handcuffs.[2]

At the same time, it cannot be disputed that the use of handcuffs is a significant factor, as the Second Circuit has observed. See United States v. Newton, 369 F.3d at 676 (explaining that "[h]andcuffs are generally recognized as a hallmark of formal arrest," and concluding that, under

---

[2] This would be consistent with the Supreme Court's holding, in the Fourth Amendment context, that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981). Several courts have recognized, however, that actions permissible under the Fourth Amendment may nonetheless may give rise to a custodial situation requiring Miranda warnings. See, e.g., United States v. Newton, 369 F.3d 659, 673-75 (2d Cir. 2004); United States v. Clemons, 201 F. Supp. 2d 142, 144 (D.D.C. 2002).

the totality of the circumstances, placement of defendant in handcuffs during a warrantless search of his home amounted to custody despite police statement to defendant that he was not under arrest and was restrained only for safety reasons); see also United States v. Smith, 3 F.3d 1088, 1097-98 (7th Cir. 1993) (suspect seized during initial Terry stop was then in custody for Miranda purposes when he was handcuffed during questioning and surrounded by police officers); accord Clemons, 201 F. Supp. 2d at 144-45.

Here, looking at the totality of the circumstances, the Court finds that a reasonable person in the defendant's position would have believed he was subject to the functional equivalent of an arrest -- i.e., his freedom was restrained to the same degree as it would be if he had been under arrest. Only five days before the search, on April 20, 2007, defendant had been arrested as the result of a traffic stop that revealed the presence of narcotics in his car. See Affidavit in Support of Application for Search Warrant (Gov't Opp., Exhibit 1). Indeed, the search warrant for defendant's residence was based entirely on evidence obtained during the stop. Id. On April 25, 2007, five officers plus a SWAT team were present at defendant's residence to execute the warrant. See Prelim. Tr. at 84. When the defendant did not answer the door, they used a battering ram to open it and, upon entering, yelled "police with a warrant, everybody down." Id. at 86. The officers had their weapons drawn, which included sub-machine guns, shotguns, and rifles. Id. at 103, 110. It is unclear whether weapons were aimed directly at the defendant at any time, but they were, at a minimum, visible and also were held rather than holstered. Id. at 110. The officers located defendant in his bedroom within 30 seconds of entry, and brought him to the living room couch and handcuffed him. Id. at 87-88. Sergeant Wilson then questioned plaintiff for about 10 minutes, asking him his identifying information, who was on the lease, and which bedroom was defendant's. Id. at 89.

The handcuffing of defendant during the execution of a search warrant does not per se amount to custody. See Bautista, 684 F.2d at 1292; see also Calloway, 298 F. Supp. 2d at 49 (holding that defendant was not in custody where plastic flex cuffs were placed on defendant during execution of search warrant). Here, however, there was much more -- forced entry was necessary, several officers were present on the scene, and unholstered weapons were clearly visible. Moreover, defendant had been arrested on a related offense only five days earlier. From an objective viewpoint, the use of handcuffs under these circumstances confirms the functional equivalent of an arrest.

The government contends that, even if defendant was in custody, his statements are admissible because the officer's questions fall under the exception to Miranda for routine booking questions. This is true for only some of defendant's statements. The exception for routine booking questions recognized in Pennsylvania v. Muniz, 496 U.S. 582 (1990) applies to Sergeant Wilson's question about defendant's identifying and biographical information, including the question concerning ownership of the apartment, but does not apply to Wilson's question as to which bedroom was defendant's.

The Supreme Court has explained that the exception is limited to questions that are "reasonably related to the police's administrative concerns," and thus that "biographical data necessary to complete booking or pretrial services" falls within the exception. Muniz, 496 U.S. at 601-02. This Circuit has thus held that questions about a defendant's address and ownership interest in the site of the search warrant are "reasonably related to . . . administrative concerns" because such information is necessary to enable an officer to provide a copy of the search warrant to the person from whose premises property was taken, as required by Fed. R. Cim. P. 41(f)(3). See Gaston, 357 F.3d at 82. The exception for questions "reasonably related to administrative

5

concerns" -- in contrast to investigative interrogation -- has been recognized by the Second Circuit as also covering a defendant's natural hair color, employment status, and marital status, where the circumstances indicated that the officers asked the question to address an administrative purpose. See Rosa v. McCray, 396 F.3d 210, 221 (2d Cir. 2005) (holding that the question "[w]hat is your real hair color" fell within exception where officers asked the question to fill in a booking form that required hair color and other identifying information); United States v. Gotchis. 803 F.2d 74, 78-79 (2d Cir. 1986) (holding that question as to what defendant "did for a living" fell within exception because it would permit the magistrate to determine the amount of bail to be fixed); United States ex rel Hines v. LaVallee, 521 F.2d 1109, 1112-13 (2d Cir. 1975) (holding that question as to defendant's marital status fell within exception because it enables police to determine whether persons claiming to be relatives should be allowed to confer with a suspect).

 Here, the Court cannot discern a similar "administrative concern" for the question pertaining to which bedroom belonged to defendant. The question stands in contrast to the types of identifying and administrative information discussed in the cases above, and is more plausibly construed as a question intended to determine whether defendant could be connected to any evidence of a crime found in the apartment. The government attempts to characterize the question as pertaining to an "administrative interest in keeping track of all the evidence recovered in an apartment occupied by two people." See Gov't's Supplemental Opp. at 3. However, such an interest could be served easily simply by identifying which pieces of evidence came from which room, without identifying the bedroom's occupant. Indeed, Officer Ward testified that this kind of question is routinely asked to determine who is "more responsible" for what is found in the bedroom. Prelim. Tr. at 93-94 (responding that officers normally ask those types of questions

because "if things are found, obviously if they are in somebody else's bedroom it indicates [they are] more responsible for them than the others."); see also id. at 105 ("we want to establish where people are and what areas they're responsible for").  It seems clear, then, that the question as to occupancy of the bedroom was designed to elicit an incriminatory admission, and is thus interrogation.

For the foregoing reasons, the Court finds that defendant was subject to custodial interrogation at the time he made the statement concerning his bedroom.  His other statements concerning ownership of the apartment, however, fall within the exception from Miranda for questions reasonably related to administrative concerns.  Thus, only any statement concerning which bedroom was defendant's is suppressed.

Accordingly, it is hereby

**ORDERED** that [12] defendant's motion to suppress statements made at his residence is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that any statements made by defendant at his residence on April 25, 2007 are admissible, other than any statement concerning which bedroom was defendant's, which is suppressed.

**SO ORDERED.**

                                                                /s/
                                      JOHN D. BATES
                                  United States District Judge

Date: September 13, 2007